JOSEPH A. CIMINO, individually and as administrator,[1]
vs. THE MILFORD KEG, INC.

Worcester. October 8, 1981. — February 23, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence*, Sale of liquor, Tavern, Motor vehicle, Emotional distress. *Alcoholic Liquors*, Sale to intoxicated person, Motor vehicle. *Proximate Cause. Emotional Distress. Pleading, Civil*, Amendment.

In an action against a tavern keeper for damages arising from the death of a highway traveler, evidence that the tavern keeper served intoxicating liquor to a patron the tavern keeper knew, or reasonably should have known, was intoxicated was sufficient to warrant the jury's finding that the tavern keeper was negligent in serving a patron who could potentially endanger others, and that the victim's death as a result of being struck by a vehicle improperly operated by the intoxicated patron, due to his intoxication, was proximately caused by the tavern keeper's negligent act. [326-328]

A plaintiff in an action against a tavern keeper who sold alcoholic beverages to an intoxicated patron who later injured a highway traveler is not required to establish special circumstances that put the tavern keeper on notice that a particular drunken patron would be driving. [328-332]

An amendment adding an additional cause of action to a complaint filed within the applicable three-year limitation period of G. L. c. 260, § 2A, which was added after the three-year period had run, but which arose out of the same underlying transaction, related back to the date of the original complaint and was not time barred. [333]

Recovery in an action for negligent infliction of emotional distress, arising from an accident occurring in 1976 in which the plaintiff witnessed injuries to his son, involved no extention or retroactive application of *Dziokonski* v. *Babineau*, 375 Mass. 555 (1978), which allowed recovery by one not in the zone of danger, where the plaintiff here, unlike the plaintiff in *Dziokonski*, was himself within the zone of danger and sustained physical harm. [333-334]

[1] Estate of John Cimino.

An action for negligent infliction of emotional distress, arising from an accident in which the plaintiff witnessed his son being struck by an automobile, was not preempted by G. L. c. 229, § 2, the wrongful death statute, and, by its nature, was not a duplicative remedy. [334]

CIVIL ACTION commenced in the Third District Court of Southern Worcester on August 24, 1976.

Upon removal to the Superior Court, the case was tried before *Tamburello*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Edward J. Shagory* (*George J. Shagory* with him) for the defendant.

*Alfred B. Cenedella, III* (*Dennis M. Sullivan* with him) for the plaintiff.

LIACOS, J. On January 19, 1976, one Richard L. Mott, while operating his motor vehicle, caused the death of the plaintiff's son, John Cimino. Mott allegedly became greatly intoxicated while a patron of the defendant tavern keeper, The Milford Keg, Inc. The plaintiff, Joseph A. Cimino, individually and in his capacity as administrator of the estate of his deceased son, John Cimino, brought this action against the defendant.[2]

The complaint was originally brought in the Third District Court of Southern Worcester on August 24, 1976, and alleged two counts against the defendant, one for wrongful death of the son and the other for the decedent's conscious pain and suffering. The action was removed to the Superior Court on the defendant's motion on September 21, 1976. The plaintiff's motion to amend his complaint adding a count for negligent infliction of emotional distress on the plaintiff was allowed on April 3, 1979. The case was tried

---

[2] Also named as defendants were Richard L. Mott and another tavern, the Blue Moon Saloon, Inc. The claims against these defendants were settled prior to the trial of this action. Neither is a party to this appeal.

to a jury from July 8, 1980, to July 11, 1980. The jury found for the plaintiff on all three counts. The defendant filed timely motions for directed verdict, to dismiss, for judgment notwithstanding the verdict or for a new trial, all of which were denied. The defendant now appeals.

The defendant argues that it was error to deny these motions because there was insufficient evidence to support a verdict that the defendant violated any duty it owed to the plaintiff, or that any such breach proximately caused the plaintiff's and decedent's injuries. The defendant also argues that the plaintiff should not have been permitted to recover on the count alleging negligent infliction of emotional distress. We affirm.

Evidence was introduced from which the jury could have found that the only entrance to The Milford Keg is through a municipal parking lot. A majority of the defendant's customers were observed during a thirty-day period arriving and leaving by automobile, and the defendant solicited business by advertisements in a newspaper which was circulated in Milford and the surrounding towns. The owner of The Milford Keg acknowledged that it had customers who would arrive and leave by automobile.

Mott went to The Milford Keg on January 19, 1976, and was served six or more "White Russians" (an intoxicating beverage containing vodka and coffee-brandy liqueur), between 1 P.M. and 6 P.M. While there Mott played pool and became drunk, loud, and vulgar. Mott had been ejected from The Milford Keg in July or August, 1975, for loud, boisterous, and drunken behavior. On the date of the fatal accident he did not remember at what time he had his last drink there, when he left, or how he got to his next destination, the Blue Moon Saloon. Mott arrived at the Blue Moon Saloon by automobile between 6:30 P.M. and 7 P.M., totally drunk and carrying a "White Russian." Mott was drunk and obnoxious at the Blue Moon Saloon. He stayed for approximately fifteen minutes and was not served a drink by anyone at the Blue Moon Saloon.

Mott was next seen between 7 P.M. and 7:15 P.M., driving a car on East Main Street in Milford. Mott swerved over the center line, went onto a sidewalk, and struck John Cimino. He then struck a telephone pole and drove away. He was arrested by the police shortly thereafter. John Cimino, age nine, was severely injured and died later that day. The plaintiff, who was walking beside his son, was "knocked" into adjacent hedges. He got up, went to his injured son, and then crossed the street to obtain assistance. Mott was subsequently charged with manslaughter, operating negligently so as to endanger the public, operating under the influence of intoxicating liquor, and leaving the scene of an accident after causing personal injuries and property damage, to which crimes he pleaded guilty.

The plaintiff suffered a number of bruises as a result of the accident. The accident and his son's death also affected the plaintiff and his relations with his family. He subsequently suffered pains in his chest and stomach, diminished appetite, and difficulty in sleeping. He became generally depressed and introspective.

1. *Duty of tavern not to serve intoxicated patron.* The defendant argues that it owes a duty to travelers only to refuse to serve patrons who are visibly or obviously intoxicated, and that insufficient evidence was introduced at trial to warrant submission of that issue (as well as the question of proximate causation, discussed below) to the jury. It is axiomatic that, in reviewing the denial of the defendant's motions for directed verdict and judgment notwithstanding the verdict, we will construe the evidence most favorably to the plaintiff and disregard that favorable to the defendant.[3]

---

[3] A motion for a new trial was joined with the motion for judgment notwithstanding the verdict. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). Cf. Mass. R. Civ. P. 59, 365 Mass. 827 (1974). A denial of a motion for new trial is within the sound discretion of the trial judge and "will be reversed only for a clear abuse of [that] discretion." *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 343 (1981). See *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 576-577 (1971). The defendant makes no such claim of error here, nor does a review of the transcript warrant such a claim.

See *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 71 (1976); *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 657 (1978).

In *Adamian* v. *Three Sons, Inc.*, 353 Mass. 498 (1968), an issue similar to that argued by the defendant was raised. *Adamian*, however, came before this court on appeal from the sustaining of a demurrer by the trial judge. While *Adamian* accordingly did not specifically address the question whether the tavern's duty arises only when the patron becomes "visibly" intoxicated, it is instructive that the complaint upheld there alleged that the patron became "greatly intoxicated" while at the defendant's tavern. *Id.* at 499. *Adamian* also held that violation of G. L. c. 138, § 69, which prohibits the sale of alcoholic beverages to an intoxicated person, is "some evidence" of the defendant's negligence.[4] *Id.* The defendant's liability in such a situation, however, is grounded on the common law doctrine of negligence and is not directly imposed by the statute. *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 275 (1970).

We agree that a tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated. We also agree with the defendant's claim that a plaintiff must introduce evidence at trial that the defendant violated the statute before Adamian's "some evidence" rule comes into effect.[5]

---

[4] General Laws c. 138, § 69, as amended by St. 1973, c. 287, provides: "No alcoholic beverage shall be sold or delivered on any premises licensed under this chapter to a person who is known to be a drunkard, to an intoxicated person, or to a person who is known to have been intoxicated within the six months last preceding."

[5] Because the evidence is more than sufficient to show that the defendant served Mott while he was obviously intoxicated, we need not reach the issue whether the second violation of § 69 found by the jury in response to special questions (service to a person who had been intoxicated within the past six months) is sufficient, standing alone, to support civil liability. See *Wiska* v. *St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813 (1979) (proof the defendant tavern served minor in violation of G. L. c. 138, § 34, insufficient to prove proximate cause of third party's injuries absent evidence tavern keeper knew sale was to minor).

The requirement that the plaintiff introduce some evidence showing the defendant was on notice that it was serving alcoholic beverages to an intoxicated patron has been accepted in other jurisdictions that have considered the matter. See, e.g., *Vesely* v. *Sager*, 5 Cal. 3d 153 (1971); *Gonzales* v. *United States*, 589 F.2d 465, 469 (9th Cir. 1979) (California law); *Paula* v. *Gagnon*, 81 Cal. App. 3d 680 (1978); *Ono* v. *Applegate*, 62 Haw. 131 (1980); *Rappaport* v. *Nichols*, 31 N.J. 188 (1959); *Campbell* v. *Carpenter*, 279 Or. 237 (1977); *Mitchell* v. *Ketner*, 54 Tenn. App. 656 (1964). See 1 J.A. Dooley, Modern Tort Law § 3.12, at 33 (1977) ("trend in the law of a vendor's liability for *overserving* alcoholic beverages" [emphasis supplied]). See also Annot., 97 A.L.R.3d 528 (1980).

The plaintiff, however, introduced sufficient evidence from which the jury could infer that Mott was visibly intoxicated when he was served. Mott's loud and vulgar conduct and the defendant's service to Mott of a large number of strong alcoholic drinks was each sufficient to put the defendant on notice that it was serving a man who could potentially endanger others. There was no error on this ground.

2. *Proximate causation of plaintiff's and decedent's injuries.* The defendant argues next that it violated no duty to persons injured by the drunken driving of its patrons in the absence of evidence that it knew or should have known that the patron arrived, or would leave, by automobile. This contention requires us to focus upon the continuing vitality of our brief opinion in *Dimond* v. *Sacilotto*, 353 Mass. 501 (1968), decided the same day as *Adamian*. In *Dimond*, we affirmed a directed verdict for the defendant. We held that a sale of beer to minors who "'felt the alcohol' . . . would not, without more, satisfy the burden upon the plaintiffs to prove proximate cause,"[6] and distinguished *Adamian* on the

---

[6] The defendant's reading of *Dimond* as dealing with duty rather than proximate cause is understandable, if erroneous. The historic rejection by common law courts of a tavern keeper's liability to third persons was

lack of evidence in *Dimond* that the defendant knew or should have known the patron was using an automobile. *Dimond, supra* at 502-503.[7]

Here a jury instruction was given that the plaintiff bore the burden of proving that the defendant knew or should have known that Mott was driving an automobile on the day of the accident. The jury answered "Yes" to special questions asking if the defendant had solicited the motoring public and if the defendant should have known Mott was using an automobile. These findings were amply supported by the plaintiff's evidence, and the verdict here would stand

---

alternatively grounded on a lack of duty and a lack of proximate cause. See generally, Comment, 48 B.U.L. Rev. 502 (1968); Note, Liability of Liquor Vendors to Third Party Victims, 56 Neb. L. Rev. 951 (1977). Compare Note, Liquor Vendor Liability for Injuries Caused by Intoxicated Patrons — A Question of Policy, 35 Ohio St. L.J. 630 (1974) (no duty to refuse to sell alcohol); Comment, Tort Liability for Suppliers of Alcohol, 44 Mo. L. Rev. 757 (1979); Comment, Common Law Liability of Tavern Owners, 1971 Wash. U.L.Q. 645 (consumption is intervening cause). As at least one commentator has noted, the general confusion in this area is the result of "applying foreseeability as to both duty and causation." 1 J.A. Dooley, Modern Tort Law § 3.12, at 31 (1977). Because the issue is one of reasonable foreseeability, the distinction between duty and proximate causation is not critical here.

[7] *Adamian* was before this court on appeal from the sustaining of a demurrer. In that case the plaintiff's declaration alleged that the defendant owned and operated a restaurant and barroom in Waltham; that "the defendant served alcoholic beverages to one Coomber, a paying customer, and negligently continued to serve him and to cause him to become greatly intoxicated"; that the defendant knew, or should have known, that Coomber arrived at its premises by automobile and upon leaving would drive the automobile on the public highway; and that "Coomber, greatly intoxicated, upon leaving the restaurant operated the automobile on the public highways in such an erratic and reckless manner that it collided with the automobile in which the plaintiff and his intestate were driving." The issue before the court was whether the plaintiff had failed to set forth a cause of action because as matter of law the defendant's conduct was not the proximate cause of the plaintiff's and the plaintiff's intestate's injuries. We held, *id.* at 501, that "[h]enceforth in this Commonwealth waste of human life due to drunken driving on the highways will not be left outside the scope of the foreseeable risk created by the sale of liquor to an already intoxicated individual." We stated, *id.* at 501, that "[w]e are unwilling to hold that the defendant's act could not, as matter of law, be the proximate cause of the injuries to the plaintiff and to his intestate."

even under *Dimond*. However, to the extent the holding in *Dimond* implies a necessity that a plaintiff must prove that the defendant knew or should have known that a particular intoxicated patron would use a motor vehicle, we decline to follow it.

*Dimond's* apparent requirement of scienter has been aptly criticized as weakening the liability of establishments that serve liquor on their premises "precisely where the social interest is strongest — the area of driving under the influence of alcohol." Comment, 48 B.U.L. Rev. 502, 512 (1968). We see no reason why the recovery by those injured by that driving should turn on such fortuities as the ability of such injured persons to prove that the defendant knew or should have known the particular person who caused the injury was going to use a motor vehicle. Such a requirement, moreover, flies in the face of the realities of modern life. We note that the Supreme Court of Oregon has acknowledged the propriety of a trial judge (sitting as the trier of fact) taking notice of the fact that it is now commonplace to travel to and from a tavern by car. *Campbell* v. *Carpenter*, 279 Or. 237 (1977). See *Rappaport* v. *Nichols*, 31 N.J. 188 (1959). A similar result was reached in *Ono* v. *Applegate*, 62 Haw. 131, 141 (1980), where the court held "that the consequences of serving liquor to an intoxicated motorist, in light of the universal use of automobiles and the increasing frequency of accidents involving drunk drivers, are foreseeable to a tavern owner."[8]

It is only necessary for the plaintiff to prove that the defendant took a risk with respect to the plaintiff's safety that a person of ordinary prudence would not have taken, and that the plaintiff suffered a resulting injury that was within the foreseeable risk. See *Wiska* v. *St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813, 818 (1979), citing *Carey*

---

[8] The case called to our attention by the defendant as imposing such a requirement of actual or constructive knowledge did so only by dictum. *Paula* v. *Gagnon*, 81 Cal. App. 3d 680, 687 (1978). See *Coulter* v. *Superior Court*, 21 Cal. 3d 144 (1978) (dictum). Cf. *Wiska* v. *St. Stanislaus Social Club, Inc., supra* at 816-817 n.5.

v. *New Yorker of Worcester, Inc.*, 355 Mass. 450, 454
(1969). The universal use of automobiles and the frequency
of accidents involving drunken drivers are matters of com-
mon knowledge. Therefore, evidence that a tavern keeper
served intoxicating liquor to a patron the tavern keeper
knew, or reasonably should have known, was intoxicated is
sufficient to warrant a jury finding that the tavern keeper
took such a risk, and that injuries to a highway traveler as a
result of being struck by a vehicle improperly operated by
the intoxicated patron, due to his intoxication, were proxi-
mately caused by the tavern keeper's negligent act.

Although he may do so, it is unnecessary for the plaintiff
to prove that the defendant solicited the motoring public, or
that many of the patrons were drivers, or that there were
any special circumstances alerting the defendant to the
knowledge that a risk existed that a particular patron would
probably drive improperly and thereby injure someone on
the highway. Without such evidence, a jury may infer that
a tavern keeper of ordinary caution recognizes that an intox-
icated patron may drive an automobile, thus creating a risk
of injury to highway travelers, and that such a person's re-
sponse to that recognition ought to be to refrain from serv-
ing liquor to the patron. A jury may also infer that service
of liquor to an intoxicated patron is the proximate cause of
injuries sustained by a traveler who suffers direct injury by
reason of a vehicle being operated by the patron in a man-
ner that is affected by his intoxication. The ultimate ques-
tion for the jury is whether the service of liquor by the
defendant tavern keeper to the intoxicated patron was a
failure to exercise that degree of care for the safety of
travelers that ought to be exercised by a tavern keeper of or-
dinary prudence in the same or similar circumstances.[9]

---

[9] The views we express make it clear that the cause of action for
negligence in a case such as this is essentially composed of the same
elements as any other tort for negligence for which the tavern owner and
bartender are liable and they are (1) a patron of premises (2) who is served
intoxicating liquors (3) while he is intoxicated (4) and under circum-
stances from which the defendant knew or reasonably should have known

There is ample support for this view in our decisions following *Adamian* which considered the liability of taverns for the acts of their intoxicated patrons while in the bar. We have found the shooting of a patron by an intoxicated patron to be reasonably foreseeable by the tavern. *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. 450 (1969). See *Kane* v. *Fields Corner Grille, Inc.*, 341 Mass. 640 (1961) (attack by belligerent patron on another patron). It is reasonably foreseeable that a drunken patron may fall from his stool and that another patron may be injured attempting to catch him. *Sweenor* v. *162 State St., Inc.*, 361 Mass. 524 (1972). See *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64 (1981) (proximate causation of injuries to drunken patron injured while dancing on the bar). At least where there has been commotion, boisterous behavior, and continued drinking, it is not "fatal to the plaintiff's case that the method of assault was not precisely foreseeable." *Carey, supra* at 452. A plaintiff is not required to establish special circumstances that put the tavern on notice that a *particular* drunken patron would be driving.[10]

3. *Recovery for emotional distress.* The defendant argues that the plaintiff's cause of action for negligent infliction of emotional distress was barred by the statute of limitations, requires an unwarranted retroactive application of our opinion in *Dziokonski* v. *Babineau*, 375 Mass. 555 (1978), and is "preempted" by the wrongful death statute, G. L. c. 229, § 2. We find no merit in these contentions.

that he was intoxicated when served (5) operates a motor vehicle while intoxicated (6) such operation was reasonably foreseeable by the defendant (7) and a person of ordinary prudence would have refrained from serving liquor to that patron in the same or similar circumstances (8) and such operation causes the plaintiff's death or injury within the scope of the foreseeable risk.

[10] The defendant also argues that the plaintiff failed to prove proximate causation since neither Mott's negligent driving nor the plaintiff's emotional distress were reasonably foreseeable. The negligent driving of a drunken patron was held to be a foreseeable cause in *Adamian, supra,* as we have elaborated it here today. It is similarly foreseeable that the drunken patron may run down a child, causing emotional distress to that child's father.

The original complaint was filed well within the applicable three-year limitation period. G. L. c. 260, § 2A. The amendment adding the cause of action for emotional distress was added after the three-year period had run, but relates back to the date of the original complaint since it arose out of the same underlying transaction. Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974). Any prejudice to the defendant is for the trial judge to weigh when considering the motion to amend. *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288 (1977).[11] The amended complaint was not time barred. *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 88-89 (1967).

This case involves no extension or retroactive application of *Dziokonski, supra.* The plaintiff here, unlike the plaintiff in *Dziokonski*, was himself indisputably in danger of being hit by Mott's car. There was considerable authority in 1976, when this accident occurred, in favor of permitting a person within the so called "zone of danger" to recover for emotional distress and injuries caused by witnessing injuries negligently inflicted on another. See Annot., 29 A.L.R.3d 1337, 1356-1357 (1970), and cases cited; Restatement (Second) of Torts § 313 (2) (1965). We acknowledged these authorities in *Dziokonski, supra* at 563-564, but there we permitted recovery by one *not* in the zone of danger. See, *id.* at 569-571 (Quirico, J., dissenting). It seems clear, also, that the case law of this Commonwealth had developed by January 19, 1976, to allow recovery for negligent infliction of emotional harm where physical impact or harm was involved as it was in this case. See *Dziokonski, supra* at 559 (cases collected). See also *Freedman* v. *Eastern Mass. St.*

---

[11] We note also that the plaintiff initiated the action both as administrator of his son's estate and individually; the original complaint referred to the "mental anguish" of the plaintiff and that the plaintiff Cimino was "present, conscious, and did witness" the injuries suffered by the son John. Thus, there was fair notice of the emotional distress claim in the original complaint. The defendant's claim that a new party (Cimino, individually) and a new claim was allowed by the amendment of April 3, 1979, is not substantiated by the record.

*Ry.*, 299 Mass. 246 (1938), which appears to be on all fours with the case at bar. The plaintiff here was properly allowed to recover on this theory.[12]

The defendant's final argument that the plaintiff's claim for emotional distress is "preempted" by the wrongful death action (G. L. c. 229, § 2) misconstrues the common law cause of action for emotional distress. Emotional distress, as the concept has evolved in this Commonwealth, is a severe psychological shock directly resulting from experiencing or witnessing the effects of a defendant's conduct. See *Dziokonski, supra*, and cases cited. See also *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507 (1980). A claim for damages based on emotional distress does not include an administrator's claim for loss of consortium — which will be present in every wrongful death action such as this. Since emotional distress is a wrong to the plaintiff distinct from that done to his son and the statutory beneficiaries of the decedent, it is not a duplicative remedy and is not "preempted" by the wrongful death statute. Cf. *Minkley* v. *McFarland*, 371 Mass. 891 (1976) (compensatory damages); *Gouras* v. *Barchi*, 5 Mass. App. Ct. 845 (1977) (loss of consortium). See also *Ferriter* v. *Daniel O'Connell's Sons, supra*.

There was no error in permitting the plaintiff's amendment or in denying the defendant's motions to dismiss, for a directed verdict, for judgment notwithstanding the verdict, or for a new trial.

*Judgments affirmed.*

---

[12] The jury specifically found that the plaintiff sustained substantial physical harm, and this finding is supported by the evidence summarized above.