KATHLEEN KIRBY & another[1] vs. LE DISCO, INC.

No. 92-P-620.

Norfolk. March 18, 1993. - June 21, 1993.

Present: DREBEN. SMITH, & GILLERMAN. JJ.

*Negligence*, Sale of liquor, Tavern. *Alcoholic Liquors*, Sale to intoxicated person.

In an action by plaintiffs who were assaulted by a man shortly after he had left the defendant's tavern at which he had spent the evening drinking beer, the judge properly granted the defendant's motion for summary judgment on the plaintiffs' claim that the tavern keeper was negligent in not recognizing the man's outwardly manifested symptoms of intoxication while he was drinking at the tavern, where the facts presented by the plaintiffs in their opposition to the defendant's motion did not present sufficient evidence from which a jury could infer that the defendant was put on notice that it was serving alcohol to an intoxicated person; nor was there evidence that the man's conduct inside the tavern was aggressive, troublesome or even loud and vulgar. [631-633]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1990.

The case was heard by *Patrick J. King*, J., on a motion for summary judgment.

*Robert W. Crowley* for the plaintiffs.

*Peter J. McCue* for the defendant.

GILLERMAN, J. It appears from sworn deposition testimony (the case comes to us on the allowance of the defendant's motion for summary judgment) that in the early morning hours of November 20, 1987, John Gillen, twenty-four years old, six feet, two inches tall, weighing 225 pounds, and a former college football player, led an unprovoked, vicious assault on the two female plaintiffs who were attempting to leave a parking garage. Immediately after the assault (Gillen

---

[1]Theresa Guest.

punched both women squarely in the face knocking each one to the ground, leaving Guest with serious head and facial injuries and Kirby with minor injuries[2]), Gillen and his companions fled the garage.

It further appears that the plaintiffs spent the evening of November 19, 1987, at the defendant's café (Chevy's) with friends eating, drinking beer, and celebrating the birthdays of the two plaintiffs. Their car was parked in the parking garage just mentioned; it was across the street from Chevy's. Gillen and his friends arrived at Chevy's at around 10:30 P.M. They, too, had parked their car in the same parking garage. When the plaintiffs and their friends left Chevy's after midnight, Gillen and his friends followed them into the garage, and the assault began.

In his deposition testimony Gillen admitted to drinking "seven to ten beers — maybe twelve," at Chevy's, with his "best estimate" being eight beers. He also testified that when he left Chevy's he was "probably legally" drunk, by which he meant that his "blood alcohol level might have been over point one." Prior to being at Chevy's, Gillen was at another establishment where he had drunk two beers.

While conceding that "there isn't any direct testimony on the issue of Gillen's condition while drinking at Chevy's," and relying solely on the facts we have stated, the plaintiffs argue that a jury should be permitted to infer that "Gillen had outwardly manifested symptoms of intoxication while he was drinking at Chevy's which an experienced bartender would have recognized."

The plaintiffs have no cognizable claim against Chevy's. It is true that a tavern keeper's service of alcohol to a person already intoxicated may be some evidence of the defendant's negligence because it violates G. L. c. 138, § 69. *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982). But § 69 (a provision prohibiting the sale of liquor to intoxicated persons)

---

[2]In his answers to interrogatories, Gillen stated that he was subsequently charged with assault and battery, in consequence of which he received a suspended sentence with probation and an order of restitution to Guest in the amount of approximately $15,000.

does not grant an independent ground for civil liability. The liability of the defendant "must be grounded in the common law of negligence." *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358 (1990). The applicable rule is that "a tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated . . . [T]he plaintiff (must) introduce some evidence showing the defendant was on notice that it was serving alcoholic beverages to an intoxicated patron." *Cimino* v. *Milford Keg, Inc., supra* at 327-328).

The few facts presented by the plaintiffs in their opposition to the defendant's motion for summary judgment, which we have described above, do not present sufficient evidence from which the jury could infer that the defendant was put on notice that it was serving alcohol to an intoxicated person. There is no evidence at all that Gillen's conduct in Chevy's was aggressive, troublesome or even loud and vulgar, as in *Cimino, supra.* Gillen's later conduct in the parking garage, however revealing of his violent nature, is not evidence from which a reasonable juror could infer that his outward conduct when he was served his last drinks inside Chevy's was that of a person already drunk,[3] and his acknowledgment later still that he was "probably legally" drunk fails for the same reason. The consumption of approximately eight beers over a period of about two hours, absent any other evidence of Gillen's conduct while in Chevy's, is too far removed from *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 65 (1981), where the consumption of "at least fifteen Heineken beers and six martinis" was sufficient to permit a rational juror to conclude that the plaintiff would have displayed "some outward manifestation of intoxication." Also contrast *Cimino, supra* at 328, where the court found that loud and vulgar conduct or the service of six or more "White Rus-

_____

[3]Contrast *Carey* v. *New Yorker, Inc.*, 355 Mass. 450, 453 (1969) (serving hard liquor to one already drunk "may well make the individual unreasonably aggressive, and enhance a condition in which it is foreseeable that almost any irrational act is foreseeable").

sians" (vodka and coffee-brandy liquor) was each sufficient to put the tavern keeper on notice that it was serving a patron "who could potentially endanger others."

*Judgment affirmed.*