Doerfer, J.
The plaintiff, Stella DiCostanzo, the administratrix of the estate of Dennis DiCostanzo, brought this action against the defendant, Victoria Station Incorporated (“Victoria Station”), alleging that Victoria Station breached its duty of care by serving alcohol to Dennis DiCostanzo (“DiCostanzo”) while he was visibly intoxicated. The plaintiff further asserts that Victoria Station’s actions in this matter proximately caused DiCostanzo’s death. Victoria Station has now moved for summary judgment on the ground that the plaintiff has failed to present any evidence that DiCostanzo was noticeably intoxicated when he was served alcohol by any employee of Victoria Station. For the reasons which follow, the defendant’s motion for summary judgment is allowed.
BACKGROUND
The facts, viewed in the light most favorable to the plaintiff, are as follows:
On the evening of January 5,1990, DiCostanzo met Kevin Gillis and Neil Sullivan at the Country Pub in Stoughton, Massachusetts.[1] (Plaintiffs Answers to Interrogatories, Nos. 7 and 14.) While at the Country Pub, DiCostanzo consumed three to four beers. (Dep. of Kevin Gillis, p. 46.) According to Kim Grant, a bartender at the Country Pub, DiCostanzo showed no visible signs of intoxication while at that establishment. (Dep. of Kimberly Grant, p. 30.) DiCostanzo left the Country Pub between 10:30 and 10:45 p.m. (Dep. of Kevin Gillis, p. 44.)
After leaving the Country Pub, DiCostanzo travelled to the Victoria Station restaurant on Sleeper Street in Boston, Massachusetts. (Dep. of Neil Sullivan, p. 49; Dep. of Kevin Gillis, p. 57.) Gayle Petitpas (“Petitpas”), a friend of DiCostanzo, testified that she went to the Victoria Station to meet DiCostanzo and some friends from the post office. (Dep. of Gayle Petitpas, p. 10.) DiCostanzo arrived at Victoria Station at approximately 11:30 p.m.[2]
While at Victoria Station, DiCostanzo consumed at least one beer. (Dep. of Gayle Petitpas, p. 13.) At one point, Petitpas ordered a round of drinks for herself and her friends. The waitress replied, “You can have your Buds but Dennis is shut off — this is Dennis’s last beer. Dennis is shut off.” (Dep. of Gayle Petitpas, p. 20.) Petitpas later told the New Hampshire Police Department that DiCostanzo only had one beer while at Victoria Station.[3] (Dep. of Gayle Petitpas, pp. 48-52.)
Linda Grossi (“Grossi”), a friend of Petitpas, arrived at Victoria Station at about 12:50 a.m. (Dep. of Linda Grossi, p. 13.) She observed DiCostanzo drinking beer from a tall glass. Id. Grossi testified that DiCostanzo was drinking the same beer the entire time he was with her. (Dep. of Linda Grossi, p. 46.)
DiCostanzo left Victoria Station sometime after 1:30 a.m. on January 6, 1990. (Dep. of Linda Grossi, p. 21.) At approximately 3:13 p.m., DiCostanzo’s vehicle was found on Route 93 southbound in Salem, New Hampshire about 300 yards north of Exit 1. His vehicle had apparently veered off the highway and struck a tree. DiCostanzo was pronounced dead at the scene. His blood alcohol level was determined to be .23.
In her deposition, Petitpas testified that while DiC-ostanzo was “absolutely joyous” at Victoria Station, “(n]othing struck out at me that Dennis was drunk” and that “(n]o red flags went off in my head that said Dennis is too drunk.” (Dep. of Gayle Petitpas, pp. 13, 18.) Petitpas also told the New Hampshire Police Department that DiCostanzo was not intoxicated while he was with her at Victoria Station.
Grossi testified that she knew DiCostanzo was drinking because he was talking “loud but not very loud.” (Dep. of Linda Grossi, pp. 15-17.) Grossi further testified that she did not recall DiCostanzo exhibiting signs of intoxication such as glassy eyes, stumbling gait, or slurred speech. Id. at 33, 34, 42, and 50. Finally, Grossi testified that, in her opinion, she felt DiCostanzo had the ability to operate a motor vehicle. Id. at 42-43.
Victoria Station has apparently lost all of its employee records and, thus, there is no testimony in the record from any Victoria Station employee as to DiCostanzo’s appearance on the night in question.
DISCUSSION
G.L.c. 138, §69 provides that “(n]o alcoholic beverage shall be sold or delivered on any premises licensed under this chapter to an intoxicated person.” G.L.c. 138, §69. A violation of this statute can be admitted as some evidence that the tavern was negligent under the common law. Wiska v. St. Stanislaus Social Club, Inc., 7 Mass.App.Ct. 813, 816 (1979). “The defendant’s liability in such a situation, however, is grounded on the common law doctrine of negligence and is not directly imposed by the statute.” Omino v. Milford Keg, Inc., 385 Mass. 323, 327 (1982). “The applicable rule *196 is that ‘a tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated . . . [T]he plaintiff (must) introduce some evidence showing the defendant was on notice that it was serving alcoholic beverages to an intoxicated patron.’ ” Kirby v. LeDisco, Inc., 34 Mass.App.Ct. 630,632 (1993), quoting Cimino, supra at 327-28.
The plaintiff relies heavily on Cimino v. Milford Keg, Inc., 385 Mass. 323 (1982), and O’Hanley v. Ninety-Nine, Inc., 12 Mass.App.Ct. 64 (1981), in her memorandum. Each case 'will be discussed in turn.
In Cimino, the Supreme Judicial Court held that whether or not a patron is visibly intoxicated when he was served can be inferred by the jury if sufficient evidence is presented. In that case, the Court found that a patron’s loud and vulgar conduct and the defendant’s service to the patron of a large number of strong alcoholic drinks (six or more White Russians) “was each sufficient to put the defendant on notice that it was serving a man who could potentially endanger others.” Id. at 328.
In O’Hanley, a bartender served a patron at least fifteen Heineken beers and six martinis. Id. at 65. The patron subsequently injured himself while attempting to dance on the bar. Id. The defendant argued that the plaintiff had not presented any evidence which would warrant the inference that the bartender continued to serve the plaintiff after he knew or should have known that the plaintiff was intoxicated. Id. at 68. The Court held, however, that “a rational jury could properly conclude that a person in the position of the plaintiff would have displayed outward manifestations of intoxication well in advance of ordering his fifteenth beer or his sixth martini.” Id. at 69.
In contrast to Cimino and O’Hanley, there is no evidence in the record that DiCostanzo consumed any more than two beers[4] nor is there any evidence that DiCostanzo was acting in a manner which would put Victoria Station on notice that he was intoxicated. Indeed, at most, the evidence indicates that DiC-ostanzo was “loud but not very loud” and “absolutely joyous.” (Dep. of Linda Grossi, p. 17; Dep. of Gayle Petitpas, p. 13.) However, none of the witnesses to his behavior at Victoria Station believed him to be intoxicated. Further, while Victoria Station “shut off’ DiC-ostanzo, presumably under the belief that he was intoxicated, there is no evidence that DiCostanzo exhibited signs of intoxication at the time he was actually served, which is the only relevant inquiry. Kirby, supra at 632.
Rather, this case is most analogous to Kirby v. LeDisco, Inc., 34 Mass.App.Ct. 630 (1993). In Kirby, a patron, upon leaving the defendant restaurant, assaulted the two plaintiffs. The patron admitted that he drank “seven to ten beers — maybe twelve” with his “best estimate” being eight beers while at the restaurant over a two-hour period. Id. at 631. He also admitted in deposition testimony that he was probably “legally drunk” when he left the defendant restaurant. Id. Based on these admissions, the plaintiffs argued that a jury should be permitted to infer that the patron “had outwardly manifested symptoms of intoxication while he was drinking at [the defendant restaurant] which an experienced bartender would have recognized.” Id. at 631.
The Court of Appeals rejected the plaintiffs argument. The Court held that the facts did “not present sufficient evidence from which the jury could infer that the defendant was serving alcohol to an intoxicated person.” Id. at 632. The Court further stated that “[t]here is no evidence at all that [the patron’s] conduct in [the defendant restaurant] was aggressive, troublesome, or even loud and vulgar.” Id. The Court found that the patron’s later conduct was not proper evidence from which a reasonable juror could infer that he had exhibited outward manifestations of intoxication when he was served his last drink. Id.
Similarly, in the present case, the plaintiff asks the court to make an inference that DiCostanzo exhibited visible signs of intoxication from the fact that DiC-ostanzo was involved in an accident not long after he left Victoria Station. However, following the mandates of Kirby, a reasonable juror may not infer, in the absence of any other evidence, including the amount of beer DiCostanzo consumed while at Victoria Station, that DiCostanzo was visibly intoxicated when he was served by an employee at Victoria Station solely on the ground that he was later involved in a fatal car accident and registered a high blood alcohol content. Thus, because there is no evidence in the record before the court from which a reasonable fact finder could conclude that Victoria Station was negligent in serving alcohol to DiCostanzo, the defendant is entitled to summary judgment on all counts in the complaint.[5]
ORDER
For the foregoing reasons, the defendant Victoria Station Incorporated’s Motion for Summary Judgment is ALLOWED.

The plaintiffs claims against the Country Pub have been dismissed.

This time period is inferred from the testimony that DiCostanzo left the Country Pub at approximately 10:30 p.m. and from the fact that it takes approximately one hour to drive from Stoughton to Boston.

At her deposition, Petitpas testified that she had no reason to believe that her statements to the police were not true, although she no longer had a clear memory of that night. (Dep. of Gayle Petitpas, p. 48-52.) Petitpas gave her statement to the police just days after the accident.

The inference that DiCostanzo even consumed two beers is drawn in the light most favorable to the plaintiff and is derived from the fact that Petitpas observed DiCostanzo drinking a green bottle of beer and Grossi observed DiC-ostanzo drinking a glass of beer. The court notes that the plaintiff has submitted the plaintiffs answers to expert interrogatories. In these interrogatories, the plaintiff states that *197 Dr. Pape, a toxicologist, will testify that, after taking into consideration DiCostanzo’s age, weight, height, sex, the time-course of his alcohol consumption, and his postmortem BAC, his opinion is that DiCostanzo consumed 16 12-ounce bottles of beer. Because these interrogatories do not contain Dr. Pape’s sworn testimony, the evidence is inadmissible for the purposes of Mass.R.Civ.P. 56.

Because the court has concluded that there is no evidence that the defendant was negligent in this matter, the court need not address the applicable standard of care under G.L.c. 229, §2.