SHIRLEY GOTTLIN[1] & another[2] *vs.* LELAND GRAVES & another.[3]

No. 94-P-1893.

Franklin. December 19, 1995. - March 14, 1996.

Present: PERRETTA, GILLERMAN, & LAURENCE, JJ.

*Practice, Civil,* Directed verdict, Judgment notwithstanding verdict. *Negligence,* Tavern, Alcoholic liquors, Intoxicated person, Causing loss of consortium, Causing loss of parental society. *Alcoholic Liquors,* Sale to intoxicated person. *Parent and Child,* Consortium, Companionship and society. *Damages,* Loss of consortium, Loss of parental society.

At the trial of a negligence action, the evidence was sufficient for rational jurors to conclude that the defendant tavern's bartender should have known that a certain person was intoxicated when she served him a last drink "for the road." [159-160]

Plaintiffs at the trial of a negligence action, the minor children of the injured plaintiff, who were at the time of the accident in the custody of the Department of Social Services, established a reasonable expectation of a dependent relationship with their injured mother to support an award of damages for loss of parental consortium. [160-161]

A Superior Court judge erred in entering judgments that reduced jury verdicts for three minor plaintiffs for loss of their mother's consortium from $750,000 to $10,000 each, based on his own assessment of their damages, but there was no error in his requiring those plaintiffs to either accept that remittitur or a new trial on the issue of damages only: where the plaintiffs were entitled to that remedy the matter was remanded for a new trial on the issue of damages. [161]

CIVIL ACTION commenced in the Superior Court Department on January 2, 1991.

The case was tried before *George C. Keady, Jr.,* J.

*Paul M. Novak* for the plaintiffs.

[1]As legal guardian of Patricia Beam.

[2]Robert Carlsen, as guardian ad litem of Amber Lee Mitchell, Steivie Beam, and Christina Beam.

[3]Herzig-Baker Corporation, doing business as Biffington's Tavern.

*Edward Mulvaney* for Leland Graves.

*Jack D. Curtiss* for Herzig-Baker Corporation.

GILLERMAN, J. Patricia Beam (Beam) was drinking at the corporate defendant's tavern (tavern) on September 17, 1990. After her boyfriend left the tavern without her, she stayed on, and later accepted a ride home with the defendant Leland Graves (Graves). Graves first dropped off his friend Lannie Sipes; shortly thereafter, his car hit a tree. Beam was seriously injured and remains in a comatose condition.[4] Suit was brought against Graves and the tavern on her behalf with a loss of consortium claim on behalf of her three minor children. Five months prior to the accident, Beam's three children had been removed from Beam's custody by the Department of Social Services and placed in foster care.

The case was tried in the Franklin Superior Court. The jury found both Graves and the tavern negligent, and awarded damages to Beam in the amount of $2,750,000 and in the amount of $750,000 to each of the children. Judgments entered accordingly.

In response to the defendants' motions for judgments notwithstanding the verdict and for a new trial, the judge ordered that the amount of damages for each child be reduced to $10,000, but that if the plaintiffs refused to accept the reductions, they could elect a new trial as to each child on damages only. See Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974). Before the plaintiffs responded to this order, an amended judgment was entered on December 30, 1992, establishing the liability of Graves and the tavern to Beam in the sum of $2,475,000,[5] but reducing the liability of Graves and the tavern to $10,000 for each of the three minor children.[6] The plaintiffs filed a timely notice of appeal.

The minor plaintiffs filed a timely motion to vacate the amended judgment as to the amount of damages and to schedule a new trial on damages. The judge denied the motion.

---

[4] A physician testified that she could respond only to painful stimuli.

[5] There may have been a clerical error in the entry of the amended judgment. The verdict slip sets damages in the amount of $2,750,000. However, the parties make no mention of the point and we do not discuss it further.

[6] It seems that the clerk entered the final judgment without awaiting an order of the judge.

Graves appealed from the denial of his motions for a directed verdict and for a judgment notwithstanding the verdict as to the loss of consortium claim on the ground that the evidence did not show that the children received "appropriate support" from their mother.

The tavern appealed on the same grounds as Graves, and in addition argues that there was insufficient evidence to show that Graves was served alcoholic beverages while intoxicated. We affirm the judgments of negligence against Graves and the tavern and we order a new trial on damages only regarding the claim of the minor plaintiffs for loss of consortium.

*Service of alcohol to Graves.* The tavern appeals from the denial of its motions for a directed verdict and for judgment notwithstanding the verdict on the count alleging negligence against it. "In evaluating the judge's refusal to grant [the defendants'] motions for directed verdicts and for judgments notwithstanding the verdicts, we assess whether the evidence, construed in the light most favorable to the plaintiffs, could support verdicts for the plaintiffs. . . . The plaintiffs are entitled to the judgments if 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff[s].' " *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 613 (1989), and cases cited. We disregard evidence favorable to the defendant. *Ibid.*

The plaintiffs' negligence claim against the tavern is based on the allegation that the tavern served liquor to Graves when he was intoxicated.[7] "[A] tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated . . . . [T]he plaintiff (must) introduce some evidence showing the defendant was on notice that it was serving alcoholic beverages to an intoxicated patron." *Kirby* v. *Le Disco, Inc.*, 34 Mass. App. Ct. 630, 632 (1993), quoting from *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327-328 (1982).

---

[7]General Laws c. 138, § 69, prohibits the sale of an alcoholic beverage to an intoxicated person at a licensed tavern. However, the liability of the tavern is grounded on the common law of negligence, not the statute. See *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982).

We summarize the evidence favorable to the plaintiffs.[8] On the day of the accident, September 17, 1990, Graves picked up his friend, Lannie Sipes, around 6:30 P.M. or 7:00 P.M. to go to the tavern and play pool. After picking up Sipes, Graves bought a six-pack of bottled beer, and while on the way to the tavern, Sipes drank two bottles; Graves drank one. At the tavern, Graves and Sipes played pool and consumed draft beers (the number is uncertain), and each one had two "shots" of Jack Daniels whiskey.[9] The bartender served Graves one beer "for the road" after he had his coat on.[10]

Joseph Gralenski, Beam's boyfriend (and, by his admission, an alcoholic), was also at the tavern on September 17, 1990. In Gralenski's opinion, Graves was intoxicated by the time Gralenski left the tavern at about 10:00 P.M. His opinion was based on the fact that Graves's "whole manner changes when he drinks."

Graves, Sipes, and Beam left the tavern about 11:20 P.M. They drove in Graves's car; Graves was driving, and Beam was a passenger in the front seat. Sipes, who lived only a mile and one-half away, was dropped off first. He arrived home at 11:30 P.M. Graves continued on toward Beam's residence, but soon hit a tree with the passenger side of his vehicle, leaving Beam, as we have said, in a comatose condition.

John Newton, a police officer for the town of Greenfield, arrived at the accident scene at about 11:40 P.M., about ten minutes after Graves left Sipes at his house, and about twenty minutes after Graves left the tavern. The officer noted a strong

[8]In response to the plaintiffs' request for admissions of facts, see Mass. R.Civ.P. 36, 365 Mass. 795 (1974), Graves made numerous material admissions. The judge instructed the jury that the answers of Graves were "applicable in the case against Graves . . . [and] would not be applicable in the case against the corporate or individual owners of the bar." There was no objection to these instructions. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). Consequently we do not consider any of Graves's admissions in assessing the case against the tavern. See *Carlson* v. *Withers*, 16 Mass. App. Ct. 924, 925 (1983), citing Smith & Zobel, Rules Practice § 36.9, at 402 (1975) ("admission does not affect any party other than the one making it"). See also Wright, Miller & Marcus, Federal Practice and Procedure § 2264, at 580 (2d ed. 1994) (admissions of a party do not bind a coparty).

[9]The tavern admitted in its response to requests for admissions that Graves was served "beers and Jack Daniels."

[10]The bartender added that she "took that beer from him," but the jury need not have credited that testimony, and we are not obliged to consider it.

odor of alcoholic beverage coming from inside the vehicle, and he observed that Graves's speech was slurred and slow, and that he was difficult to understand. The officer was of the opinion that respond and his dexterity in trying to produce any kind of identification was poor. The officer was of the opinion that Graves was intoxicated, and that when Graves hit the tree, he was traveling at no less than fifty-nine miles per hour in a thirty-five miles per hour zone.

Officer Peter Skerritt also arrived at about 11:50 P.M. He observed that Graves's eyes were bloodshot, unsteady, and unfixed. The officer smelled a very strong odor of alcohol coming from Graves's breath. In the opinion of Officer Skerritt, Graves was intoxicated.

A third police officer, Ralph Odom, who arrived at about 11:40 P.M., found Graves unsure of from where he had been coming, where he was going, who Beam was, and who was driving the car. Graves had a "carefree attitude", his speech was slurred, his eyes were watery, bloodshot and glazed over, and there was an odor of alcohol coming from his breath. Officer Odom concluded that at the time of the accident, Graves "was under the influence of alcohol."

The tavern argues that there was absolutely no evidence as to Graves's behavior, appearance or conduct at the tavern which put the bartender on notice that she may have been serving an intoxicated person. That position ignores evidence, previously recounted, that Graves had drunk one beer on the way to the tavern, consumed draft beers and two shots of Jack Daniels while at the tavern, and finally, was served one beer "for the road." Within twenty minutes of leaving the tavern, Graves drove off the road at a high rate of speed and directly into a tree. Gralenski, who left the tavern at 10:00 P.M., saw that Graves, while at the tavern, was intoxicated. Three police officers found Graves obviously intoxicated within twenty minutes of his leaving the tavern, and without any intervening consumption of alcohol (so the jury could have found). Their observations permit the inference that Graves would have demonstrated signs of intoxication twenty minutes earlier.

While the testimony is not clear as to what hour in the evening Graves's intoxication became obvious, nor is it clear how many drinks Graves was served after that point, at the very least the service of "one for the road" was one too many

to avoid liability. Based on reasonable inferences that may be drawn from the testimony favorable to the plaintiffs, a rational juror could have concluded from the evidence that the bartender should have known that Graves was intoxicated when she served him his last beer.[11] See *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. 126, 139 n.9 (1996) (in determining the issue of negligence, the jury could consider evidence of blood alcohol level taken two hours after the accident).

*Loss of consortium.* As noted above, "[t]he plaintiffs are entitled to the judgments if 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff[s].' " *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. at 613. We disregard evidence favorable to the defendant. *Ibid.*

In support of the claim of the loss of consortium, the plaintiffs offered the testimony of Sylvia Charland.[12] She had taken two of the children to visit their mother at Worcester County Hospital. Steivie, who had expressed a desire to see her mother, "made a shrine of her mother's picture of her in the hospital and would take it to bed with her and cry." Amber wanted to go because Steivie had gone. When the children arrived at their mother's hospital room, Amber "just kind of ran out of the room." When the children returned home, Amber cried hysterically when one of the cats did not

---

[11]*Kirby* v. *Le Disco, Inc.*, 34 Mass. App. Ct. at 632, cited by the defendant, is inapposite on the facts. There the defendant had consumed eight beers over two hours, but no whiskey or bourbon, and while the defendant's post-tavern conduct revealed a vicious character, there was no evidence that he was intoxicated. Closer to the facts of this case is *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64 (1981). The action was dismissed by the judge on summary judgment; that judgment was reversed on appeal. The proffered evidence showed that the plaintiff had been served and consumed at least fifteen beers and six martinis. There, too, the defendant argued that there was nothing in the evidence which permitted the inference that the bartenders served the plaintiff after they knew or should have known that the plaintiff was intoxicated. We rejected that argument. "We think a rational jury could properly conclude that a person in the position of the plaintiff would have displayed some outward manifestation of intoxication well in advance of ordering his fifteenth beer or his sixth martini which could have been recognized by an experienced bartender who was more interested in observing the law than in pocketing tips." *Id.* at 69.

[12]Charland and her husband were in the process of adopting Beam's children.

want to be petted. It was Mrs. Charland's opinion that Amber was expressing her sadness about her mother. For a month after that she would bring up her sadness about her mother.

"[I]n order to recover for loss of parental consortium, [a child] must establish *a reasonable expectancy* of a dependent relationship with the injured parent" (emphasis added). *Angelini* v. *OMD Corp.*, 410 Mass. 653, 662 (1991). The dependent relationship has to do with the child's "dependence on the injured parent for management of the child's needs and for emotional guidance and support rather than economic dependence on the injured parent." *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. at 618, citing *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 496 (1983). While there is no requirement that a child must be living in the injured parent's household to recover for loss of parental society,[13] the plaintiff carries the burden of proving the existence, and impairment, of a dependency relationship between the child and parent in a loss of consortium claim. *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. at 618 n.6. "It is fair to say that no extensive display of facts is required to demonstrate, in light of ordinary human experience, an emotional or psychological dependence by the child upon her mother. See *Ferriter* [v. *Daniel O'Connell's Sons*, 381 Mass. 507, 516 (1980)]." *Id.* at 619.

The amount of damages to which the children may be entitled as a result of the loss of their mother's consortium presents genuine issues in dispute, for it cannot be said that the value of the reasonable expectancy of their loss is zero. There was plain error in the entry of a judgment based on the judge's — not the jury's — assessment of the damages suffered by the children. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 803 (1987). See also Mass.R.Civ.P. 59(a). Nevertheless, the judge did not, in our opinion, abuse his discretion in entering the order dated December 18, 1992, requiring the plaintiffs to accept either the remittitur or a new trial on damages. *Ibid.* See also *D'Annolfo* v. *Stoneham Hous. Authy.*, 375 Mass. 650, 658-662 (1978). The plaintiffs' brief makes it clear that had they been given the opportunity, they would have elected a new trial on damages, and they are now entitled to that remedy.

---

[13]The parties stipulated that in April of 1990, the Department of Social Services had taken custody of the minor children of Patricia Beam because, in the opinion of the department, Patricia Beam was unable to care for her children properly.

The judgments for plaintiff Patricia Beam against defendant Graves and against defendant Herzig-Baker Corporation are affirmed. The judgment for the minor plaintiffs against defendants Graves and Herzig-Baker Corporation is vacated as to the amount of damages, and the case is remanded for a new trial on the issue of damages only.

*So ordered.*