HELEN M. VICKOWSKI *vs.* POLISH AMERICAN CITIZENS CLUB OF THE TOWN OF DEERFIELD, INC., & another.[1]

Franklin. March 5, 1996. - May 7, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Negligence,* Sale of liquor, Tavern, Motor vehicle, Res ipsa loquitur. *Alcoholic Liquors,* Sale to intoxicated person, Motor vehicle. *Practice, Civil,* Summary judgment. *Intoxication.*

In an action against an incorporated social club seeking damages for personal injuries suffered by the plaintiff when struck by an automobile operated by a person who had consumed alcoholic beverages at the club, evidence on the record of a motion for summary judgment of the driver's demeanor and behavior at the scene of the accident did not alone support a reasonable inference to a sufficient degree of probability that the driver was showing the same signs of intoxication one-half hour earlier at the club so that liability should be imposed on the club for serving alcohol to an intoxicated person. [609-612]

In a civil action the judge correctly concluded that proof of a tavern's violation of G. L. c. 138, § 69, was "merely evidence of negligence" and correctly concluded that the plaintiff was required to demonstrate proof of discernable intoxication with respect to the tortfeasor who injured her in order to establish the tavern's liability. [612-613]

There was no merit to the contention of a plaintiff in a civil action that the doctrine of res ipsa loquitur should be applicable to diminish the plaintiff's burden of proving that a patron of licensed premises was intoxicated when served alcohol before he caused the automobile accident that injured the plaintiff. [613]

CIVIL ACTION commenced in the Superior Court Department on January 14, 1993.

The case was heard by *James P. Dohoney,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy Sibbison* for the plaintiff.

[1]Frank M. Fydenkevez, who is not a party to this appeal.

*William W. Adams* for Polish American Citizens Club of the Town of Deerfield, Inc.

GREANEY, J. The plaintiff, Helen M. Vickowski, commenced an action in the Superior Court against the defendant, Frank M. Fydenkevez (Fydenkevez), and the Polish American Citizens Club of the Town of Deerfield, Inc. (club), seeking damages for personal injuries she suffered after she was struck by an automobile operated by Fydenkevez, who had consumed alcoholic beverages at the club. In her amended complaint, the plaintiff asserted that Fydenkevez was negligent because he drove his automobile while under the influence of intoxicating liquor, and that the club was liable for damages because the club had failed to exercise due care in serving alcoholic beverages to Fydenkevez. A judge in the Superior Court allowed a motion by the club for summary judgment, see Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974), and properly ordered entry of a separate final judgment for the club pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). The plaintiff appealed to the Appeals Court, and we granted her application for direct appellate review. We conclude that summary judgment was granted correctly, and, consequently, we affirm the judgment for the club.

The record, considered in the light most favorable to the plaintiff (nonmoving party), see *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 438 (1995), discloses the following undisputed facts. As of 1992, Fydenkevez had been visiting the club, an establishment licensed to sell alcoholic beverages, for about thirteen years, on an average of four to five times a week. Fydenkevez generally went to the club to drink beer. On Saturday, November 28, 1992, between 2:30 P.M. and 4:20 P.M., he consumed four or five twelve-ounce bottles of beer while at the club. He had consumed no alcohol prior to his arrival there. While drinking, he sat alone and quietly on a stool at the bar, watching television. He had nothing to eat.

Fydenkevez's son, Stephen Fydenkevez, was the bartender at the club that afternoon. Stephen, whose training in bartending was limited to a couple of weeks of "on the job" training, was accustomed to serving beer to his father at the club. Stephen indicated, in deposition testimony, that when his father arrived, around 2:30 P.M., he was not obviously intoxicated, that when his father ordered beer in the course of

the afternoon, there were no indications which led Stephen to believe that his father was intoxicated, and that he did not believe at any time that day that his father was intoxicated. Stephen made no effort to monitor his father's condition on the afternoon in question. He did not have any conversation with his father, and he did not see him get off his stool and walk at any time. Stephen did not refuse to serve his father, and indicated that he would not be concerned about a person's ability to operate a motor vehicle after the consumption of four to five beers. Fydenkevez indicated that four to five beers was an unusually large amount for him to drink during the length of time he was at the club that afternoon.[2] There was no other evidence concerning Fydenkevez's condition or appearance during the relevant two-hour period. Neither Fydenkevez nor Stephen was able to recall the name of any other person present in the club on the day of the accident.

Fydenkevez was served his last beer around 4 P.M. He left the club sometime before 4:30 P.M., and apparently stopped briefly at a local grocery store. Shortly after 4:30 P.M., his automobile struck and severely injured the plaintiff as she was crossing a street. A Deerfield police officer who was called to the scene of the accident, observed that Fydenkevez smelled of alcoholic beverages, that his gait was unsteady and he swayed when he was standing still, that his movements were slow and deliberate, and that his eyes appeared bloodshot. About one-half hour later, Fydenkevez failed field sobriety tests administered by the officer, who observed at this point that Fydenkevez's speech was somewhat slurred. The officer

---

[2]The plaintiff's contention that Fydenkevez may have consumed as many as eight beers at the club on the day of the accident is not supported by the deposition testimony of Fydenkevez and his son, which is the only evidence in the record on this point. Fydenkevez and his son testified that Fydenkevez was served, and consumed, four to five beers that day. Asked how he could be sure of his consumption, Fydenkevez observed that he could not be sure, but that six beers would be too many for him to drink at one time, and that even four or five beers was a lot for him to drink over a two-hour time span. Stephen stated that his father usually drank four to five beers when he spent the afternoon at the club, and that he drank this amount on the day of the accident. There was no evidence to contradict the testimony furnished by father and son. It would be misleading to construe this testimony as an admission that Fydenkevez consumed as many as eight beers (a suggestion by the plaintiff's attorney in the course of interrogation which was not adopted by the deponent, Fydenkevez), and for a jury so to conclude, on this showing, would amount to unacceptable speculation.

arrested Fydenkevez for operating a motor vehicle while under the influence of intoxicating liquor; Fydenkevez was later convicted on that charge. Two witnesses to the accident also furnished information about Fydenkevez's demeanor at the scene. One of these witnesses indicated that she smelled alcohol on Fydenkevez, and that he was stumbling over his own feet. The other witness also smelled alcohol, observed the stumbling, and described Fydenkevez's speech as babbling. Both witnesses opined that Fydenkevez was obviously intoxicated.

1. The question of the club's liability is "grounded in the common law of negligence." *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358 (1990). The well-established governing rule is "that a tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated. . . . [T]he plaintiff [must] introduce some evidence showing that the defendant was on notice that it was serving . . . an intoxicated patron." *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327-328 (1982).

Summary judgment is appropriate when the moving party demonstrates, by reference to materials listed in Mass. R. Civ. P. 56 (c), that the nonmoving party, who will have the burden of proof at trial, lacks sufficient evidence to establish an essential element of his or her claim. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 715 (1991). The defendant contends (and the Superior Court judge agreed) that the materials presented by the plaintiff in opposition to the club's motion fail to sustain her burden, see *id.* at 715-716, in the sense that these materials fail to demonstrate that there is a genuine issue of fact that could be resolved by a jury in her favor on an essential element of her claim: that the club (through its employee) knew or should have known it was furnishing alcohol to an intoxicated patron.

In support of her claim, the plaintiff does not rely on direct evidence of Fydenkevez's conduct or demeanor at the club. Lacking such evidence, she contends that a jury properly could infer, from the evidence of Fydenkevez's demeanor and behavior furnished by the three witnesses at the scene of the accident, that he must have been showing similar apparent signs of intoxication "a half-hour and one beer earlier." Therefore, she reasons, a jury could conclude that the club

violated its duty to the plaintiff and failed to exercise "that degree of care for the safety [of pedestrians] that ought to be exercised by a tavern keeper of ordinary prudence in the same or similar circumstances" (footnote omitted). *Cimino* v. *Milford Keg, Inc., supra* at 331. We think this particular leap, unsupported by additional probative evidence, direct or circumstantial, bearing on Fydenkevez's conduct or demeanor at the club, would not permit a reasonable inference to a sufficient degree of probability and would, in effect, impose liability on the basis of unacceptable speculation on the part of a jury.

As has been previously noted, "a tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated." *Id.* at 327. The negligence lies in serving alcohol to a person who already is showing discernible signs of intoxication. See *McGuiggan* v. *New England Tel. & Tel Co.*, 398 Mass. 152, 161 (1986). A plaintiff's evidence must be sufficient to establish that, more probably than not, the patron in question was exhibiting signs of intoxication before he or she was served a last alcoholic drink (or drinks).

The imposition of liability on a commercial establishment for the service of alcohol to an intoxicated person who subsequently causes injury to another, often has turned, in large part, on evidence of obvious intoxication at the time a patron was served. See *Cimino* v. *Milford Keg, Inc., supra* at 325, 328 (patron was "totally drunk"; "loud and vulgar"); *Gottlin* v. *Graves*, 40 Mass. App. Ct. 155, 158 (1996) (acquaintance testified patron who had accident displayed obvious intoxication one hour and twenty minutes before leaving bar); *Hopping* v. *Whirlaway, Inc.*, 37 Mass. App. Ct. 121, 124 (1994) (sufficient evidence for jury where acquaintance described patron who later had accident as appearing to feel "pretty good"). Contrast *Makynen* v. *Mustakangas*, 39 Mass. App. Ct. 309, 314 (1995) (commercial establishment could not be liable when there was no evidence of obvious intoxication while patron was at bar); *Kirby* v. *Le Disco, Inc.*, 34 Mass. App. Ct. 630, 632 (1993) (affirming summary judgment for defendant in absence of any evidence of obvious intoxication); *Wiska* v. *St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813, 816-817 (1979) (directed verdict in favor of com-

mercial establishment affirmed when there was no evidence that patron was served alcohol after he began exhibiting obvious signs of intoxication).

Direct evidence of obvious intoxication is not necessarily an essential part of a plaintiff's proof. This court has observed that "service [to a patron] of a large number of strong alcoholic drinks [would be] sufficient to put [a licensee] on notice that it was serving a [patron] who could potentially endanger others." *Cimino* v. *Milford Keg, Inc., supra* at 328. In other words, a jury confronted with evidence of a patron's excessive consumption of alcohol, properly could infer, on the basis of common sense and experience, that the patron would have displayed obvious outward signs of intoxication while continuing to receive service from the licensee. See P.J. Liacos, Massachusetts Evidence § 4.2, at 118-119; § 5.8.6, at 242-244 (6th ed. 1994 & Supp. 1994). In the *Cimino* case, the evidence was that the patron had been served six or more " 'White Russians' (an intoxicating beverage containing vodka and coffee-brandy liqueur)." *Id.* at 325. See *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 65 (1981) (inference of obvious intoxication could be drawn from evidence that patron consumed at least fifteen beers and six martinis).[3] When evidence of excessive consumption is lacking, as matter of common sense and experience, the inference may not be drawn. See *Kirby* v. *Le Disco, Inc., supra* at 632 (consumption of eight beers insufficient to support inference of obvious intoxication); *Makynen* v. *Mustakangas, supra* at 312 (same, as to consumption of five to six cans of beer). The evidence in this case — Fydenkevez, who was in the habit of drinking beer, "sipped" four to five bottles over the course of approximately two hours — clearly would not warrant an inference of obvious intoxication based on excessive consumption.

We agree with the plaintiff that other forms of circumstantial evidence also might be sufficient to create a jury question on whether a licensee had served alcoholic beverages to a

---

[3]In *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 65 (1981), the Appeals Court held that an inebriated customer could bring suit on his own behalf for injuries he sustained after a bartender served him alcoholic beverages while he was obviously intoxicated. The Legislature subsequently limited a licensee's liability in such circumstances to "wilful, wanton, or reckless conduct" on the licensee's part. See G. L. c. 231, § 85S (second), inserted by St. 1985, c. 223, § 18. See *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 154-155 n.4 (1986).

patron displaying obvious signs of intoxication. Nonetheless, we have been reluctant to accept evidence of subsequent, obvious intoxication as a surrogate for evidence of a patron's demeanor at the relevant time. In *McGuiggan* v. *New England Tel. & Tel. Co., supra* at 162,[4] we held that an affidavit that might have been thought to prove a condition of obvious intoxication in a guest just before he left his host's home, was not sufficient to support liability on the host's part. In the absence of other evidence of obvious intoxication, we said that the evidence (expert testimony based on the results of a breathalyzer test) had "no bearing on what [the guest's] apparent condition was at the time he took his last drink." *Id.* Our reluctance to accept such evidence as sufficient stems from the uncertainties of the situation, including the possible delayed impact of the consumption of alcohol, and the unknown effect on a patron of the last drink served to him by a licensee. "Cases of this character must be decided one by one, applying common law principles." *McGuiggan* v. *New England Tel. & Tel. Co., supra* at 161. We conclude, that, in the circumstances of this case, a jury could not draw an inference of obvious intoxication with the requisite degree of certainty.[5]

2. We briefly address the other arguments made by the plaintiff. The plaintiff appears to contend that the judge erred by concluding that, to prevail on a common law claim of negligence, a plaintiff must establish that a tavern has violated G. L. c. 138, § 69 (1994 ed.).[6] The judge correctly noted that proof of a violation of § 69 was "merely evidence of

---

[4]Although the *McGuiggan* case concerns the imposition of liability on a social host rather than the liability of a licensee, the essential question remains whether the person who caused injury to the plaintiff was served an alcoholic drink by a social host (or a licensee) who knew, or should have known, that the person already was intoxicated. *McGuiggan* v. *New England Tel. & Tel Co.*, 398 Mass. 152, 162 (1986).

[5]We do not mean to suggest that evidence of subsequent intoxication is irrelevant, or wholly lacking in probative force. Such evidence properly could be used to bolster other evidence tending to prove that a patron already showing obvious signs of intoxication was served alcoholic beverages by a licensee. Thus, we agree with the Appeals Court that evidence of subsequent intoxication at the scene of an accident could bolster evidence of a patron's obvious intoxication while at a tavern. See *Gottlin* v. *Graves*, 40 Mass. App. Ct. 155, 159 (1996).

[6]General Laws c. 138, § 69 (1994 ed.), provides, in its entirety: "No alcoholic beverages shall be sold or delivered on any premises licensed

negligence," see *Bennett* v. *Eagle Brook Country Store, Inc.*, *supra* at 358-359, a point that was of more moment when the statute also prohibited service to a person known to be a drunkard, or known to have been intoxicated within the last six months. See *id.* at 357. To the extent the plaintiff contends that the judge erred in concluding that a plaintiff is required to demonstrate proof of discernible intoxication, she has ignored that this is what our cases have required.

We also reject the plaintiff's contention that the doctrine of res ipsa loquitur should be applied to diminish the plaintiff's burden of proof. First, it cannot be concluded, on this record, that evidence of Fydenkevez's behavior or demeanor was in the exclusive control of the club.[7] More to the point, application of the doctrine in cases like this one would create a presumption of liability whenever the patron of licensed premises causes injury to a third party while under the influence of intoxicating liquor, thus shifting to the defendant the burden of proving, at a minimum, that the patron had not exhibited obvious signs of intoxication while in the tavern. We decline to alter the law on this point.

*Judgment affirmed.*

---

under this chapter to an intoxicated person." Section 62 of the same chapter makes a violation of § 69 a criminal offense. See *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 357 (1990).

[7]There is nothing in the record to indicate that the plaintiff made any effort to discover the identity of other patrons present in the club during the period immediately preceding the accident other than asking Fydenkevez and his son whether they remembered who had been there. It is unclear, for example, whether any inquiry was instituted through the club.