Welch, J.
This is another dram shop case where the issue is how many drinks are necessary to present a circumstantial case to the jury. There is no direct evidence concerning any intoxicated behavior by the patron at the time that he ordered two “Fog Cutters” at the China Lion Restaurant in Lynn, Massachusetts, on the evening of June 13, 1999. Instead, the plaintiffs rely upon circumstantial evidence. They assert that Mr. Clifford Huggins’ (the patron) consumption of beer prior to entering the China Lion and his failure to pass certain sobriety tests soon after leaving the China Lion are sufficient to permit a jury to draw a reasonable inference that Huggins displayed obvious signs of intoxication before being served his second “Fog Cutter.”
A plaintiff is entitled to prove a dram shop case by way of circumstantial evidence. The plaintiff must prove by a preponderance of the credible evidence that the bartender knew or reasonably should have known that the patron was intoxicated at the time he served that patron his or her last drink. An inference of obvious intoxication can be drawn from evidence of prior alcohol consumption. For example, in O’Hanley v. Ninety-nine, Inc., 12 Mass. App. 64, 65 (1981), the Appeals Court concluded that an inference of obvious intoxication could be drawn from evidence that patron consumed at least fifteen (15) beers and six (6) Martinis. This entire amount of alcohol was consumed at one establishment over a ten-hour period. During this period of time, the patron also advised one of the bartenders that he “intended to dance on the bar.” Id. Likewise, the consumption of seven (7) “White Russians,” combined with “loud and vulgar” behavior which indicated that the patron was “totally drunk” was more than enough to establish liability under the dram shop statute. Cimino v. Milford Keg, Inc., 385 Mass. 323, 328 (1982). Cases such as O’Hanley and Cimino are typical in that not only is there evidence of excessive consumption of alcohol prior to being served the last drink by the bartender but also some direct evidence of intoxicated behavior in the establishment. See also, Gottlin v. Graves, 40 Mass. App. 155, 159 (witness saw that patron was intoxicated “while at the tavern”). In the present case, the plaintiff has been unable to present any evidence of intoxicated behavior within the China Lion establishment. Instead, the plaintiff relies solely upon circumstantial evidence relating to the number of drinks consumed by the patron and his behavior after the automobile accident which occurred a few minutes after leaving the China Lion.
The patron in question in this case, Clifford Huggins, is a 49-year-old male.[1] On Sunday, June 13, 1999, Mr. Huggins awoke, picked up his son and a friend and went to a golf tournament at the Rowley Country Club. The threesome ate a breakfast at the Agawam Diner. Huggins consumed a hearty serving of two eggs over easy, ham, home fries and a cup of coffee. After nine holes of golf on a warm morning, Mr. Huggins was ready for lunch. Barbeque Chicken, potatoes and pasta salad was eaten, washed down with, at the most, three twelve (12) ounce beers. This lunch lasted from approximately 12:30 p.m. to 1:30 p.m. Huggins then drove to his home is Lynn, Massachusetts without incident. Between 3:00 p.m. and 6:00 p.m., Huggins consumed eight (8) more twelve (12) ounce Budweiser beers, bringing the total of beers to eleven (11). During this time, Huggins ate some potato chips and watched television.
Shortly after 6:00 p.m., Mr. Huggins decided to go with two friends to a nearby local Chinese restaurant called the China Lion. At approximately 7:00 p.m., Huggins and his friends sat down at the bar and ordered three appetizers (Chicken Wings, Boneless Pork Strips and Crab Ragoon) and drinks. His friends ordered beer, Huggins asked for and was served a “Fog Cutter.” The “Fog Cutter” was either an eight-or ten-ounce drink. The contents of a Fog Cutter are not apparent from the record in this case. Judges, however, do not live in a vacuum and this judge believes that he can take judicial notice that Fog Cutter is an alcoholic beverage which contains some sort of alcohol along the lines of Rum, Vodka, or some other similar liquor.[2] While Huggins and his friends ate the appetizers, they ordered another round of drinks. Huggins was served and drank a second “Fog Cutter.” At approximately 8:30 p.m., the men had paid for their drinks and left the China Lion. See Deposition of Clifford Huggins.
Huggins and his friends then walked to his vehicle. Huggins began to drive home and soon thereafter was involved in a traffic accident at a Lynn intersection. The accident occurred at approximately 8:40 p.m. The Lynn Police arrived at the accident scene and smelled *734 a strong odor of alcohol on Huggins. They also noted that he was unsteady on his feet and swaying back and forth. His eyes were red and glassy and he was, at times, slurring his words. The Lynn Police administered various field sobriety tests. Mr. Huggins failed most of these. Although he was able to recite the alphabet, he was unable to complete a one-legged stand and a step/heel test. Huggins was also unable to walk in a balanced manner. Huggins submitted to a Breathalyzer at approximately 10:00 p.m. (one hour and twenty-eight minutes after the accident). The initial reading on the Breathalyzer was .27, the next reading was .28. Both of these readings are well over the legal limit of intoxication.
There is no doubt that “service [to a patron] of a large number of strong alcoholic drinks [would be] sufficient to put [a licencee] on notice that it was serving [a patron] who could potentially endanger others.” Cimino v. Milford Key, Inc., supra at 328. “In other words, a jury confronted with evidence of a patron’s excessive consumption of alcohol, properly could infer, on the basis of common sense, that the patron would have displayed obvious outward signs of intoxication while continuing to receive service from the licensee.” Vickowski v. Polish American Citizens Club of the Town of Deerfield, Inc., 422 Mass. 606, 611 (1996). But evidence of excessive consumption there must be. This is because the establishment is only liable if the patron was exhibiting obvious signs of intoxication before being served an alcoholic beverage. For example, the consumption of approximately “eight (8) beers in a period of about two hours” is not sufficient, in and of itself, to establish liability. Kirby v. Le Disco, Inc., 34 Mass. App. 630, 632 (1993). Likewise, five or six beers in an hour and half would not be sufficient to place someone on notice that the patron or guest was intoxicated. Makynen v. Mustakangas, 39 Mass. App. 309, 312 (1995). See also, Vickowski v. Polish American Citizens Club, supra at 611 (sipping four or five bottles of beer over approximately two hours “clearly would not warrant an inference of obvious intoxication based upon excessive consumption”).
The present case, namely eleven (11) beers consumed over approximately six-hour period, while eating food, and one (1) Fog Cutter while eating appetizers, is not enough to establish a reasonable inference of obvious intoxication at the time of ordering the last Fog Cutter.
The plaintiff also relies upon the circumstantial evidence concerning the patron’s behavior soon after leaving the China Lion. Within approximately ten minutes after his departure from the China Lion, Mr. Huggins was not able to walk a straight line, was unsteady on his feet, and was swaying back and forth. As the results of the Breathalyzer test show, Huggins was plainly intoxicated at the time that he left the China Lion. Courts, however, “have been reluctant to accept evidence of subsequent obvious intoxication as a surrogate for evidence of a patron’s demeanor at the relevant time.” Vickowski, supra at 612. “A reluctance to accept such evidence as sufficient stems from the uncertainties of the situation, including the possible delayed impact of the consumption of alcohol and the unknown effect on the patron of the last drink served on him by the licensee.” Id. These statements apply with particular force to the present case. A jury can only speculate as to Mr. Huggins’ appearance and behavior when the second round of drinks were ordered at the China Lion. Huggins was not taking any medications; he was an experienced drinker; his consumption of eleven beers spanned six hours and was accompanied by the consumption of food. What was Mr. Huggins’ appearance when he was sitting with two friends eating appetizers and the last drink is served? A juiy, using its common sense, can only guess. This case falls within the holding of the Vickowski precedent. The motion for summary judgment must be allowed.

The size and weight of Mr. Huggins is not established by the record. Mr. Huggins was no stranger to alcohol. He drank only on weekends. Over the course of a weekend he would consume approximately a case of beer. Occasionally he would drink a “Fog Cutter.” See Deposition of Clifford Huggins.

Several recipes for the “Fog Cutter” drink indicate that the drink is made with IV2 oz. of light rum, Vi oz. of gin, Vi oz. of brandy. Orange and lemon juice is also added, along with IVi teaspoons of orgeat syrup (a bitter almond syrup).