# United States Court of Appeals
## For the First Circuit

No. 06-1737

PHOUNG LUC & THAI MINH CHINH,

Plaintiffs, Appellants,

v.

WYNDHAM MANAGEMENT CORP., et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

David S.V. Shirley, with whom Joseph F. McDowell, III and McDowell & Osburn, P.A., were on brief, for appellants.
Timothy J. Smyth, with whom Thomas B. Farrey, III and Burns & Farey, were on brief, for appellees Tremont Boston Hotel, et al.
Clyde K. Hanyen, with whom Peter E. Heppner and Lynch & Lynch, were on brief, for appellee Boston Ballroom Corporation.

August 7, 2007

**LIPEZ, <u>Circuit Judge</u>**. This diversity case involves a tragic accident which is not susceptible to the legal remedy that the plaintiffs-appellants seek in this action. They suffered injuries and losses as a result of Roberto Madruga's decision to drive while intoxicated. However, they are pursuing claims not against Madruga but against the bar that served him, and the hotel that housed that bar. As a federal court with diversity jurisdiction, we are bound to follow the law as articulated by the state courts, and we find that Massachusetts does not presently recognize the theories of liability asserted by plaintiffs. We, therefore, must affirm the district court's entry of summary judgment for defendants.

**I.**

**A. Factual Background**

Plaintiffs, husband Thai Minh Chinh and wife Phoung Luc, were driving to their home in Concord, New Hampshire, late at night on July 21, 2002. Luc was four months pregnant with their first child and needed to exit the car; Chinh, who was driving, pulled the car into the break-down lane and came to a stop. Luc unfastened her seatbelt and opened the passenger-side door. At that moment, their car was hit from behind by a truck driven by Madruga. The plaintiffs' car turned upside down and both Luc and Chinh were hurt. Among other injuries, Luc suffered a miscarriage.

At the time of the accident, Madruga was driving the truck, which belonged to his cousin, Helio Demelo, because Demelo was too intoxicated to drive. The pair, along with Demelo's girlfriend, had spent the evening at a Boston nightclub, the Roxy, which occupied the second floor of the Tremont Hotel. While at the Roxy, Madruga drank three mixed drinks, each of which had at least two shots of liquor, and one bottle of water. The group left the club shortly before 2:00 a.m., and Madruga began driving them home. After getting onto Interstate 93, northbound, Madruga set the cruise control and apparently fell asleep or otherwise stopped paying attention to the road. The vehicle drifted into the break-down lane and rear-ended the plaintiffs at a speed of about sixty miles per hour.

The Massachusetts State Police quickly arrived at the accident scene, where Madruga failed a number of field sobriety tests, including a breathalyzer test. He was arrested for driving a vehicle under the influence of alcohol.

The plaintiffs were taken to the hospital. Chinh's injuries were relatively minor, but Luc suffered serious injuries and was hospitalized for more than seventy days.

## B. Procedural History

Plaintiffs filed this case in the district court, based on complete diversity of the parties and an amount in controversy in excess of $75,000. Plaintiffs originally sued both Madruga and

Demelo, as well as the numerous corporate and business entities that owned or operated the Roxy and the Hotel.[1] Madruga and Demelo were subsequently dismissed from the case. The Roxy moved to dismiss one of the claims against it[2] and the Hotel moved to dismiss all thirteen claims against it. The Roxy argued that Massachusetts does not recognize the claim asserted by plaintiffs based on the Roxy's "method of operations." The Hotel argued that Massachusetts recognized no claims under which it could be held liable for the Roxy's serving of alcohol to Madruga. After a hearing, the district court granted the Roxy's motion and part of the Hotel's motion, leaving two claims against the Hotel intact, but dismissing eleven others. After discovery, both defendants moved for summary judgment, which the district court granted.

---

[1] The Hotel and the Roxy are separate businesses, owned by different companies. The Hotel defendants include Wyndham International, Inc., Wyndham Management Corp., CHC Lease Partners, Wyndham International Operating Partnership, Patriot American Hospitality Partnership, Patriot American Hospitality, Inc., Patriot American Hospitality Operating Co., and Patriot American Hospitality General Partnership. The Roxy is owned and operated by the Boston Ballroom Corporation.

[2] The second claim against the Roxy was based on a traditional theory of negligence, often referred to as "dram shop liability." Under this theory, a bar or tavern may be liable for the wrongful or injurious actions of a patron if it served alcohol to that patron after it knew, or should have known, that the patron was already intoxicated. Adamian v. Three Sons, Inc., 233 N.E.2d 18, 20 (Mass. 1968). This claim was dismissed due to insufficient evidence of any Roxy employee serving Madruga alcohol after they knew, or should have known, that he was intoxicated.

-4-

Plaintiffs appealed the dismissal of the "method of operations" claim against the Roxy and four claims against the Hotel.[3]

## II.

**A.  Standard of Review**

We review the district court's grant of a motion to dismiss for failure to state a claim de novo, while "taking as true the well-pleaded facts contained in the complaint and drawing all reasonable inferences therefrom in the plaintiff's favor." Garrett v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002).  With this "plaintiff-friendly" approach in mind, we may affirm the dismissal only if the facts lend themselves to no viable theories of recovery.  Id.  However, we are not limited to the reasoning offered by the district court, but "may affirm an order of dismissal on any basis made apparent by the record."  Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006).

Also, as a federal court considering state law claims, we must apply the state's law on substantive issues and "we are bound by the teachings of the state's highest court."  N. Am. Specialty

---

[3] After considering the Hotel's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court allowed two claims against the Hotel to proceed.  These were both agency claims alleging that the Roxy functioned as an agent of the Hotel, and that the Hotel could be held vicariously liable for its agent's actions.  Those claims were later dismissed in response to the Hotel's motion for summary judgment.  The agency claims are not at issue in this appeal; thus, all four claims at issue here were dismissed pursuant to a 12(b)(6) motion.

Ins. Co. v. Lapalme, 258 F.3d 35, 37-38 (1st Cir. 2001).  If the state's highest court, here the Supreme Judicial Court ("SJC"), has not definitively addressed a question, we may consult other sources as we "make an informed prophecy" about what rule the state courts would likely follow.  Id. at 38.  That said, however, we generally make such prophecies only on interstitial questions.  As a federal court, we will not create new rules or significantly expand existing rules.  We leave those tasks to the state courts.  See Jordan v. Hawker Dayton Corp., 62 F.3d 29, 32 (1st Cir. 1995) ("[P]laintiff chose a federal, rather than a state forum, presumably cognizant of this court's statement that 'litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed.'" (quoting Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 744 (1st Cir. 1990))); see also Douglas v. York County, 433 F.3d 143, 149 (1st Cir. 2005) ("It is not our role to expand [state] law; that is left to the courts of [the state]."); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1448 (1st Cir. 1995).  With these principles guiding us, we address first the claim against the Roxy, and then turn to the claims against the Hotel.

**B. Claim Against the Roxy**

Plaintiffs have appealed the dismissal of their so-called "method of operation" claim, wherein they urge us to recognize a new theory of liability for bar or tavern owners.  We first survey

the applicable Massachusetts tort liability law and then analyze how this novel claim might fit within existing law.

In 1968, the SJC held that a person injured in a car accident, caused by an intoxicated driver, could have a cause of action against the owner of the bar where that driver was served. Adamian v. Three Sons, Inc., 233 N.E.2d 18, 20 (Mass. 1968). However, the court explicitly stated that liability would only attach where the bar could have reasonably foreseen the risk of serving an "already intoxicated" patron. Id. Thus, the SJC adopted the rule that "a tavern keeper does not owe a duty to refuse liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated." Cimino v. Milford Keg, Inc., 431 N.E.2d 920, 924 (Mass. 1982).[4] There can be no negligence on the part of the tavern owner unless he serves alcohol to a person "who already is showing discernible signs of intoxication." Vickowski v. Polish Am. Citizens Club, 664 N.E.2d 429, 432 (Mass. 1996). That visible intoxication provides a basis for inferring the requisite knowledge

---

[4] Massachusetts courts have applied the same rule to "social hosts." When a private person invites others into his or her home, the host may be liable for the negligence of a guest only if the host "has served or provided liquor to an intoxicated guest." Ulwick v. DeChristopher, 582 N.E.2d 954, 957 (Mass. 1991). Thus, regardless whether alcohol is served in a commercial or private setting, negligence is tied to knowing service of an already intoxicated person.

of intoxication, with its attendant foreseeable risks, on the part of the tavern owner.

Thus, a plaintiff who shows that the patron in question was actually intoxicated has not done enough to establish liability. The evidence must also show that the intoxication was apparent, or should have been apparent, to the server prior to service of the last alcoholic drink. Id. Where a patron "was exhibiting signs of intoxication before he or she was served a last alcoholic drink (or drinks)," id., there is circumstantial evidence of the tavern owner's knowledge that he was serving an already-intoxicated person. This type of circumstantial evidence enables plaintiffs to carry their burden without the difficulty of providing direct evidence of the tavern keeper's knowledge. See, e.g., Makynen v. Mustakangas, 655 N.E.2d 1284, 1287 (Mass. App. Ct. 1995) (no liability without evidence of patron's obvious intoxication prior to service of his last drink); Kirby v. Le Disco, Inc., 614 N.E.2d 1016, 1018 (Mass. App. Ct. 1993) (same).

The plaintiffs seek to offer a different type of circumstantial evidence to show that the bar knew, or should have known, that it was serving intoxicated patrons, thereby creating foreseeable risks to those patrons and third parties. They contend that the Roxy's "method of operation" provides a basis for inferring such knowledge. They emphasize that the Roxy was managed in a way that ensured maximum alcohol sales with minimal knowledge

-8-

on the part of the bartenders and waiters about the level of intoxication of any particular patron. They point to the low ratio of servers to customers (one server for every sixty customers), the atmosphere (dark, loud, and crowded), and the availability of alcoholic beverages from multiple sales points. A given customer could purchase a drink from any of the sixteen bartenders or six wait staff, and could purchase different drinks from each of these servers throughout the evening. Thus, plaintiffs allege, it is possible for a patron to become heavily intoxicated without a single server having sold that person more than one drink, and, consequently, without realizing the risk of over-serving that patron.

Furthermore, the plaintiffs claim that this situation is exacerbated by the inability of Roxy servers to implement the good serving practices taught at their training sessions. The Roxy required each server to take a course called "Training for Intervention Procedures," ("TIPS") which is designed to decrease the likelihood of over-serving customers by teaching servers about visual cues of intoxication, controlling customers' rate of consumption, keeping track of the strength of drinks served, and advising customers to order food while drinking. The plaintiffs allege that Roxy's wait staff could not possibly apply the procedures taught during TIPS training because there were too many

customers for each server and the atmosphere made it difficult for a server to observe a given customer's behavior.

The plaintiffs also contend that the Roxy had notice of its allegedly dangerous practices because of numerous past incidents involving negligent or criminal activity by Roxy patrons. For example, the plaintiffs note that Massachusetts notified the Roxy whenever someone was convicted of driving while intoxicated and informed the police that they received their alcohol from the Roxy. There were five such reports during the five months prior to the plaintiffs' car accident.

Based on the police reports and other evidence that its patrons sometimes became excessively intoxicated, the plaintiffs claim that the Roxy's method of operation created sufficient notice of the likely risks that intoxicated persons purchasing alcoholic drinks at their premises would harm themselves or others. Therefore, to prevent the bar's size, commercial structure, and atmosphere from sheltering it from liability for the negligent driving of one of its patrons, they ask us to reverse the district court's dismissal and reinstate the method of operation claim against the Roxy.

Massachusetts courts have not yet recognized the theory of liability proposed by the plaintiffs.[5] The case of <u>Tobin</u> v.

[5] Plaintiffs have submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) citing a recent decision by the Massachusetts Supreme Judicial Court in support of their theory of

<u>Norwood Country Club, Inc.</u>, 661 N.E.2d 627 (Mass. 1996), relied on by the plaintiffs, is not to the contrary. There, a country club was held liable after a minor became intoxicated at a private function and injured herself. The club had supplied a bartender and alcohol. <u>Id.</u> at 629-30, 633-34. In holding the club liable, the SJC pointed to factors such as the bartender's location, his inability to monitor who was receiving the drinks he sold, and the absence of a club manager to monitor the alcohol intake of the guests. <u>Id.</u> at 633-36. There was no direct evidence that the bartender (or other club employees) had served alcohol to the minor. While these factors do describe a "method of operation," they were cited for the limited purpose of showing that the club had caused the minor's alcohol consumption, "in the absence of an actual 'hand to hand' transaction or its equivalent." <u>Id.</u> at 632.

In cases involving minors, the critical fact is the service of alcohol to an under-aged person. Such service itself

_____

liability. In <u>Sheehan</u> v. <u>Roche Bros. Supermarkets, Inc.</u>, 863 N.E.2d 1276, 1284 (Mass. 2007), the SJC held that evidence of a business's "method of operation" could be used to satisfy the notice requirement in a "slip and fall" case. The court explained that a "plaintiff satisfies the notice requirement if he establishes that an injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation." <u>Id.</u> at 1283. However, <u>Sheehan</u> was limited to premises liability claims, involving unsafe conditions on an owner's property, and did not establish a generalized "method of operation" theory for all negligence claims. <u>See</u> <u>id.</u> at 1280, 1286-87. This is not a premises liability case. Given our inability to expand or alter state law, we cannot rely on <u>Sheehan</u> to adopt the new theory proffered by plaintiffs.

can be the basis for liability.  In cases involving adults, a plaintiff must show both service and knowledge of the patron's intoxication.  <u>Tobin</u> says nothing about use of a "method of operation" as circumstantial evidence of the tavern keeper's knowledge of an adult customer's intoxication.

Whatever the force of plaintiffs' "method of operation" theory of liability (and we make no judgment about it), our role as a federal court hearing a state law claim is circumscribed.  The plaintiffs may be correct that Massachusetts would want to prevent the sort of commercial behavior engaged in by the Roxy.  Thus far, however, the state courts have repeatedly reaffirmed the rule originally articulated in <u>Adamian</u>: a defendant tavern owner may not be liable unless his tavern served a patron who was already <u>visibly</u> intoxicated, and hence the tavern owner knew or had reason to know of the risk involved in such service.  Any alterations to this rule must come from either the Massachusetts legislature or the state courts.  We are, therefore, compelled to affirm the district court's dismissal of the method of operations claim against the Roxy.

## C.  Claims Against the Hotel

The district court dismissed four claims against the Hotel, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a cognizable claim.  These claims sought to impose primary liability on the Tremont Hotel based on general principles

of tort law, including three provisions in the Restatement (Second) of Torts and principles of negligent entrustment and negligent supervision.  Plaintiffs reassert these generalized principles on appeal and request that we reinstate the four claims, despite the absence of any Massachusetts cases recognizing these theories of liability in similar circumstances.  We briefly summarize each of the four claims, as well as the most closely related Massachusetts case law.  We then address the viability of the four claims collectively, which suffer from a common flaw.

Plaintiffs' first and fourth claims against the Hotel are premised on the theory that a lessor may be responsible for the negligent actions of his tenant, if the lessor was aware of the tenant's use of the property and the risks associated with that use.  In support of this theory, plaintiffs point to § 379A of the Restatement[6], which describes claims against lessors based on the actions of their lessees, and to the doctrine of negligent

_____

[6] Section 379A of the Restatement of Torts states:
A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
    (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and
    (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.
Restatement (Second) of Torts § 379A (1965).

-13-

entrustment[7], which applies generally to owners of personal property, although they have not identified any Massachusetts cases that support this theory of liability.

Plaintiffs argue that the Hotel can be held liable under this theory because the Hotel knew, at the time the lease was signed, that the Roxy would serve alcohol and had grounds to know that there would be an unreasonable risk of over-serving patrons. More specifically, plaintiffs point to a diagram of the Roxy's layout and the nature of the business. They also note that after the Roxy opened, and during the course of its nearly twenty-year existence, the Hotel received reports from the owners of the Roxy about various incidents that were investigated or responded to by the police. Additionally, plaintiffs cite the lease agreement as evidence of the Hotel's knowledge that the Roxy's operations would create a risk of over-service. The lease required the Roxy to comply with its liquor license, to obtain liquor liability insurance, to indemnify the Hotel for any liability resulting from the sale of alcohol at the Roxy, and to notify the Hotel of any liquor license (or other legal) violations by the Roxy. The Hotel

---

[7] In Massachusetts, the common law doctrine of negligent entrustment (and its related theory of negligent supervision) has been used primarily in cases involving dangerous instrumentalities, such as cars and weapons. In such cases, the elements of negligent entrustment are: control over the instrumentality, entrustment of (or permission to use) the instrumentality to another, and knowledge that the other is incompetent or incapable of using the instrumentality with due care. Miranda v. Anderson, No. BACV 2005140, 2006 WL 2006134, at *3 (Mass. Super. Apr. 6, 2006).

-14-

also reserved the right to inspect the premises, to approve the floor plan for the Roxy, to impose rules and regulations on the Roxy, and to evict the Roxy if problems arose which were not rectified. According to the plaintiffs, all of these lease provisions, taken together, show that the Hotel was aware of the risks created by the Roxy's alcohol sales.

Plaintiffs' second and third claims against the Hotel are based on their related theory that the Hotel exercised control over the Roxy's business practices, and thus can be held independently liable for the risks created by those practices. Here, they point to § 315[8] and § 318[9] of the Restatement, which deal with "special

_____

[8] Section 315 of the Restatement of Torts states:
There is no duty to control the conduct of a third person [e.g., the Roxy] as to prevent him from causing physical harm to another [e.g., plaintiffs] unless
(a) a special relation exists between the actor [e.g., the Hotel] and the third person [e.g., the Roxy] which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
Restatement (Second) of Torts § 315 (1965).

[9] Section 318 of the Restatement of Torts states:
If the actor [e.g., the Hotel] permits a third person [e.g., the Roxy] to use land or chattels in his possession otherwise than as a servant, he [the Hotel] is, if present, under a duty to exercise reasonable care so to control the conduct of the third person [the Roxy] as to prevent him from intentionally harming others [the plaintiffs] or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor [the Hotel]
(a) knows or has reason to know that he has the ability to control the third person [the Roxy], and

-15-

relationships" between a defendant and a third party. Plaintiffs note that these Restatement provisions have been recognized as describing viable claims in Massachusetts. See, e.g., Medina v. Pillemer, No. 04-0290-H, 2005 WL 3627226, at *5 (Mass. Super. Dec. 23, 2005) (noting four general types of "special relationships" that have given rise to third-party liability in Massachusetts); Davis v. United States, 340 F. Supp. 2d 79, 91 (D. Mass. 2004) ("Massachusetts law would likely impose a duty on a private person to protect another from the wrongful acts of third parties based 'on the existence of a special relationship between the negligent person and the person or entity on whom it is sought to impose liability'." (quoting Mosko v. Raytheon Co., 622 N.E. 2d 1066, 1070 (Mass. 1993))). Plaintiffs argue that the Hotel and the Roxy had a special relationship, based on the terms of the lease, and that this relationship permitted, and indeed required, the Hotel to control the Roxy's actions.

Whatever the merits abstractly of these theories of liability against the Hotel, they fail in this case because each of them requires a showing that the Roxy behaved in an unreasonably risky or negligent manner. Restatement § 379A states that a landlord may only be liable if he knew, or had reason to know, that the tenant's activities would "unavoidably involve such an

---

(b)  knows  or  should  know  of  the  necessity  and
        opportunity for exercising such control.
Restatement (Second) of Torts § 318 (1965).

unreasonable risk." Similarly, § 315 of the Restatement provides for liability when an actor has a "special relationship" with another, which "imposes a duty upon the actor" to prevent the third person from "causing physical harm" to others. (Although § 315 does not expressly require a showing that the third party was negligent, such a requirement is implicit, and has been recognized by Massachusetts courts. See infra.) Section 318 of the Restatement provides for liability for landowners who allow others to use their land for activities that "create an unreasonable risk of bodily harm" to third persons. Finally, as to its negligent entrustment and supervision claims, the plaintiffs themselves allege that a landlord's duty is to "reasonably mitigate or reduce the foreseeable risk of harm" caused or created by "a pattern of inappropriate, negligent conduct." Each of these theories, then, requires not only that the defendant either controls or has a "special relationship" with the third-party actor (e.g., the Roxy), but also that the third-party actor behaved in an unreasonably risky manner. As we explained above, Massachusetts courts have unequivocally stated that a tavern-keeper does not create an unreasonable risk to patrons or others unless he serves alcohol to a patron who is visibly intoxicated. Therefore, without any such evidence (and there is none in this case), the plaintiffs have not, and cannot, show that the Roxy engaged in the requisite

unreasonably risky behavior that would create the possibility of the Hotel's liability.[10]

A closer look at a valid § 315 claim demonstrates the necessity of identifying negligent or wrongful behavior by the third party.[11] In presenting their § 315 claim (involving a special relationship between an actor (the Hotel) and a third party (the Roxy)), the plaintiffs cite to Davis, 340 F. Supp. 2d at 91, which acknowledged that Massachusetts courts had recognized this theory of liability. Davis specifically states, however, that the relevant duty is "to protect another from the wrongful acts of third parties based on the existence of a special relationship between the negligent person and the person or entity on whom" the

---

[10] As noted above, see supra note 2, the plaintiffs are not pursuing on appeal a claim of vicarious liability, which would require evidence of an agency (or master-servant) relationship between the Hotel and the Roxy. In a vicarious liability claim, the third party acts on behalf of, or under the direction of, the defendant. See Kansallis Fin. Ltd. v. Fern, 659 N.E.2d 731, 733-34 (Mass. 1996) (explaining that vicarious liability applies in the context of agency relationships, specifically partnerships (where each partner is an agent of the entity) and employer-employee relationships (where the employee is an agent of the employer), and the particular elements of liability are determined by the nature of the agency relationship). Plaintiffs do not claim here that the Roxy was an agent of the Hotel, but rather that the Hotel had sufficient knowledge of the Roxy's business practices as to be culpable for declining to intervene therein.

[11] We use the § 315 claim as our example because it is the only theory of liability which does not explicitly require a demonstration that the third party behaved negligently or in an unreasonably risky manner. As our discussion illustrates, even without that express requirement, Massachusetts courts have construed this theory of liability to require such a showing.

duty is imposed.  Id. (emphasis added) (citation and internal quotation marks omitted).  The court's use of "wrongful" and "negligent" to describe the third party action indicates that even if a § 315 cause of action exists, the duty thereby recognized is one of preventing or stopping negligence.  See also Atwood v. Cape Cod Hosp., 770 N.E.2d 1002, 1002 (Mass. App. Ct. 2002)(holding that a negligent entrustment claim fails, as a matter of law, where the third party had not behaved negligently).  Therefore, in the absence of a plausible theory of negligent conduct on the part of the Roxy, the Hotel cannot be liable pursuant to the theories advanced by plaintiffs.

In an effort to avoid this conclusion, plaintiffs rely on two cases — Krueger v. Fraternity of Phi Gamma Delta, Inc., No. 004292G, 2001 WL 1334996 (Mass. Super. May 18, 2001), and Jean W. v. Commonwealth, 610 N.E.2d 305, 315 (Mass. 1993) — to demonstrate that Massachusetts courts have been willing "to apply basic tort principles . . . to fact patterns that have no direct precedent."[12] In Krueger, a trial court permitted a claim against a landlord dormitory owner to go forward, where the tenant (a college fraternity) had served alcohol to a minor, who later died.  The court agreed that a landlord typically would not have a duty to protect students from underage drinking.  However, the defendant

_____

[12] Plaintiffs also rely on Tobin, 661 N.E.2d 627.  We find that decision unhelpful, for the reasons described above and therefore do not discuss it further.

-19-

also held a dormitory license and city regulations required that licensees be responsible for "ensuring that minors are not served alcoholic beverages." Krueger, 2001 WL 1334996, at *5. Therefore, in Krueger, the cause of action was based on the landlord's duty, pursuant to the license, to prevent its tenants from serving alcohol to minors. Here, nothing in either the lease or any publicly granted license imposes a duty on the Hotel to control or monitor the tenant's behavior vis-a-vis third-party patrons. Krueger therefore does not support the existence of a relevant cause of action.

In Jean W., the "special relationship" that had not previously been recognized was one of physical custody or control over a person. 610 N.E.2d at 315. The third party who injured the plaintiffs was a convicted murderer who had been erroneously released, due to a clerical mistake, from prison and placed on parole. While on parole, he was required to regularly report to a state parole officer. Id. at 306-07. Given that the state had a custodial and supervisory relationship with the convict, the court recognized that the plaintiffs could state a claim for negligence against the state. Id. at 315.

Here, although the Hotel had some ability to influence the Roxy's actions, it did not remotely have the kind of control over the Roxy that the Commonwealth in Jean W. had over a prisoner in its custody. The SJC's willingness to acknowledge the

possibility of a cause of action in that case does not permit us to go beyond the boundaries of existing state law here.

### III.

Plaintiffs have also asked that we certify the questions raised in this appeal to the Massachusetts SJC, giving that court the opportunity to evaluate whether the alleged causes of action are viable. We preliminarily denied their request prior to oral argument, but reserved the possibility of reconsideration.

We now decline to certify any of the legal questions raised in this case to the SJC. The claims raised here should be raised in the state courts in the first instance. Id. ("Plaintiff here brought suit in the federal forum, and as we said in Cantwell, 'one who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification." (quoting Cantwell, 551 F.2d at 880)); see also Porter v. Nutter, 913 F.2d 37, 41 (1st Cir. 1990) ("If we are unwilling to stretch state precedents to reach new frontiers, a litigant [], who deliberately 'chose to reject a state-court forum in favor of a federal forum . . . is in a perilously poor position to grumble' about our stodginess. We may, perhaps, be unadventurous in our interpretation of [state] law, but a plaintiff who seeks out a federal venue in a diversity action should anticipate no more." (internal citations omitted) (quoting Kassell v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989))).

Furthermore, as to the Hotel, we have held that even if a viable theory of liability existed, those claims must fail without a plausible allegation of negligence against the Roxy. Certification would be especially inappropriate where the legal question was effectively mooted by a factual defect in the plaintiffs' case.

## IV.

For the reasons explained above, we **affirm** the district court's dismissal of claims against both the Roxy and the Hotel. The plaintiffs' motion to certify questions to the SJC is **denied**.

**So ordered.**